UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CYNERGY DATA LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| BMO HARRIS BANK N.A., | ) |
| | ) |
| Defendant. | ) |

# COMPLAINT

Plaintiff Cynergy Data LLC ("Cynergy"), by and through its undersigned attorneys, complains of the Defendant, BMO Harris Bank N.A. ("Harris Bank"), and in support thereof alleges the following:

## PRELIMINARY STATEMENT

1. This case concerns a contract under which Harris Bank has overcharged Plaintiff by millions of dollars and refused to provide account information that would further reveal its own misdeeds.

2. In 2009, Harris Bank agreed to provide liquidity to Cynergy on an as-necessary basis and agreed to *only* charge fees and interest when sufficient funds were not already available in the bank account that Harris Bank controlled. Instead, Harris Bank has repeatedly, and secretly, charged Plaintiff for purportedly providing funding on occasions when, in reality, none was needed.

3. Harris Bank has also refused Cynergy's repeated demands for documentation that would shed light on its unauthorized deductions—information that Harris Bank is contractually required to provide.

4. Cynergy therefore brings claims for breach of contract and, in the alternative, unjust enrichment.

## THE PARTIES, JURISDICTION, VENUE AND CHOICE OF LAW

5. Plaintiff is a limited liability company organized under the laws of the State of Delaware with its headquarters in Alpharetta, Georgia. Plaintiff provides myriad payment processing services to small and mid-sized merchants throughout the United States. In 2014, Cynergy was acquired by another payment processor, Priority Payment Systems LLC ("PPS"). PPS is a limited liability company organized under the laws of the State of Georgia with its headquarters in Alpharetta, Georgia. As a result of the 2014 merger, PPS and Cynergy are commonly referred to as "Priority" for purposes of managing Cynergy's existing relationship with Defendant.

6. Defendant Harris is a national banking association with offices in Chicago, Illinois. It is a subsidiary of BMO Financial Corp., a corporation organized under the laws of Delaware and headquartered in Wilmington, Delaware. BMO Financial Corp. was previously a joint investor in Moneris Solutions, Inc. ("Moneris") an Illinois-based corporation acquired by Vantiv, Inc. in December 2016.

7. This is an action for, *inter alia*, breach of the BIN Sponsor Agreement between Harris, Cynergy, and Moneris, dated October 23, 2008, (the "Agreement"). A true and correct copy is attached as Exhibit A.

8. The Agreement states that "for purposes of actions brought by [Cynergy], jurisdiction and venue shall be in any court located in Cook County, Illinois." Ex. A at § 9.13.

2

9. The Agreement further states: "The Agreement will be deemed to be a contract made under the laws of the State of Illinois, and will be construed in accordance with the laws of Illinois without regard to principles and conflicts of law." *Id.* at § 9.7.

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs. Plaintiffs' members, as well as the members of its members to its ultimate ownership are either (i) business entities formed under the laws of either New York or Georgia each with their principal place of business in Georgia; or (ii) natural persons are citizens of states other than Illinois.

## OVERVIEW OF PAYMENT PROCESSING

11. Through a variety of services, payment processors like Cynergy allow merchants to accept credit card payments.

12. When a consumer swipes her credit card, information about the transaction is requested from the bank that issued the card (known as the "issuing bank"), which then authorizes the transaction. At the end of each business day, the merchant's bank (known as the "acquiring bank"), requests payment for each authorized transaction. The issuing bank remits payment for the amount of the charge, minus its own fee (known as the "interchange fee"). This transfer is referred to as "settlement." Each of these steps is facilitated by the payment processor.

13. In order to facilitate the transfer of funds from issuing banks to acquiring banks, payment processors must be "sponsored" by another bank, and that bank must be a member of a credit card association.

14. Traditionally, merchants were required to pay interchange fees on a daily basis. However, this system made it difficult for merchants to reconcile their daily sales with their bank

deposits, since the deposits would arrive from the payment processor with the interchange fees already taken out. In recent years, payment processors began to offer so-called "monthly discount services" to solve this problem. One such program is contemplated by an amendment to the Agreement.

15. Under a monthly discount service, the issuing bank is still paid the interchange fee on a daily basis by the payment processor, but the payment processor fronts that money and then charges the merchant a lump sum at the end of the month.

## THE AGREEMENT

16. On November 1, 2008, Cynergy Data LLC entered into the Agreement, whereby Harris Bank agreed to sponsor Cynergy into the credit card associations. Under the Agreement, Harris Bank acts as the acquiring bank for the network of merchants to whom Cynergy provided payment processing services. Cynergy is responsible for the administration of those accounts.

17. In 2009, Cynergy began to offer monthly discount services. That required Cynergy to front interchange fees for its merchants on a daily basis, only recouping those fees at the end of the month. As the monthly discount program grew, Cynergy was required to front increasingly large sums of money from its settlement account on behalf of merchants.

18. On April 27, 2009, Cynergy and Harris Bank signed the Second Amendment to BIN Sponsor Agreement (the "Second Amendment"), a true and correct copy of which is attached hereto as Exhibit B.

19. Under the Second Amendment, Harris Bank agreed to partially fund interchange for Cynergy. To the extent there were insufficient funds in Cynergy's settlement account to pay interchange fees on a given day, Harris Bank agreed to advance whatever additional funds were

4

required to pay those fees. In return, Harris Bank would charge interest on whatever funds it actually advanced (the "interchange funding fee").

20. Moneris, a payment processor and then-subsidiary of Harris Bank, would facilitate the necessary transactions—billing the merchants and depositing all net fees and charges into Cynergy's settlement demand deposit account (the "Settlement DDA"), minus the interest owed to Harris Bank/Moneris.

21. Under the Agreement, Harris Bank was obligated to provide Cynergy, "within 2 business days after receipt by [Harris] Bank, all BIN processing reports received from Associations *and any additional data related to this Agreement requested by*" Cynergy. Ex. A at p. 13, § 3.1.F (emphasis added).

## DEFENDANT'S REFUSAL TO PROVIDE ADDITIONAL DATA

22. Harris Bank provides a daily and monthly invoice of income and expenses incurred under the Agreement. However, in early 2015, the management team of PPS, PPS having since merged with Cynergy in 2014 and taken over its role under the Agreement, became concerned that it was being overcharged, and that the invoices did not tell the whole story.

23. On February 24, 2015, Priority requested in writing that Harris Bank provide supporting documentation relating to $14 million in deductions by Harris Bank from Cynergy's Settlement DDA. At any given time during that time period, the Settlement DDA contained approximately $40 to 60 million in funds, which belonged to approximately 70,000 merchants. Without detailed account reconciliation from Harris Bank, it was difficult for Priority to verify completely the propriety of the charges billed to the account by Harris Bank.

24. Harris Bank responded to Priority's formal request on March 10, 2015:

> "Under Moneris' fiduciary authority with BMO Harris Bank, Moneris' treasury management decisions related to these funds and the activity

5

resulting from these decisions are performed at the sole discretion of Moneris Solutions, Inc. Such decisions and activity are deemed confidential to Moneris Solutions, Inc."

25. Harris Bank's refusal to provide the requested information violated the Agreement, which requires Harris Bank to provide "any additional data . . . requested by" Cynergy. Ex. A at p. 13, § 3.1.F.

26. Despite numerous additional requests in writing, Harris Bank has continued to refuse to provide daily reconciliation of the Settlement Account funds, without which Priority has been unable to monitor the extent to which additional funds purportedly fronted by Harris Bank were actually required in order to avoid interchange funding fees.

## OVERBILLING BY HARRIS BANK

27. Through Priority's own calculations, it determined that Harris Bank repeatedly and systematically improperly billed fees to Cynergy under the Agreement for alleged interchange funding and other alleged expenses associated therewith.

28. Since April 2009, Harris Bank has been billing Cynergy interchange funding fees. Harris Bank was only authorized to charge such fees to the extent the funds in Cynergy's settlement account on a given day were insufficient to cover the issuing banks' daily interchange fees charged in connection with the transactions Cynergy processed that day. Conversely, if Cynergy's settlement account contained sufficient funds to cover the daily exchange fees, then Harris Bank did not need to not advance Cynergy any funds and would not be authorized to charge any related fees.

29. Because the funds in the settlement account are fungible, it is common industry practice to allow merchant funds as well as payment processor funds to be used to settle daily interchange fees. Taking into account both sources of funds, Cynergy's settlement account had,

at all relevant times, sufficient funds to pay the daily interchange fees to the issuing banks. Since April 2009, Cynergy never required Harris Bank to advance it funds and therefore should never have been charged an interchange funding fee.

30. To the extent that Harris Bank housed funds in Cynergy's accounts, Cynergy should not have been charged interchange funding fees because those funds were not actually necessary to cover Cynergy's daily interchange fees.

31. Priority wrote to Harris Bank in November 2015 to inform Harris of its concerns regarding overbilling and to demand that Harris Bank immediately cease charging interchange funding fees. Harris Bank nonetheless continued charging such fees on a monthly basis until Priority terminated the BIN Sponsorship Agreement in January 2016.

32. By Priority's reckoning, the overbilling of Cynergy by Harris Bank has totaled more than $3.4 million.

## COUNT I
### (Breach of Contract)

33. Plaintiff repeats and realleges the allegations in the preceding paragraphs as though fully set forth herein.

34. The Agreement to retain is a valid and enforceable contract.

35. Priority and its predecessor Cynergy fully performed all of their obligations under that contract.

36. Under the Second Amendment to the Agreement, Harris Bank is authorized to collect interest only on the portion of interchange funded by Harris Bank.

37. Harris Bank has instead housed funds and charged Cynergy for "usage," which was not contemplated by the Agreement.

38. Defendant has also consistently and improperly charged fees for "float" associated with the interchange.

39. Priority has calculated that it has been overcharged approximately $3,347,451.51.

40. Defendant's charging fees not contemplated by the Second Amendment to the Agreement is a breach of the Agreement.

41. Priority has calculated that it has been damaged as a result of Defendant's breach in excess of $3,347,451.51.

42. WHEREFORE, Plaintiff Cynergy Data LLC prays for a judgment in its favor and against Defendant Harris Bank on Count I in an amount to be determined at trial, estimated to be an amount exceeding $3,347,451.51, attorneys' fees, prejudgment interest, costs, and for such other relief as the Court deems just and fair.

## COUNT II
### (Breach of Contract—Failure to Provide Requested Data)

43. Plaintiff repeats and realleges the allegations in the preceding paragraphs as though fully set forth herein.

44. The Agreement to retain is a valid and enforceable contract.

45. Priority and its predecessor Cynergy fully performed all of their obligations under that contract.

46. Under the Agreement, Harris Bank is required to provide Priority with any additional information it requests about the subject of the Agreement.

47. Priority has made several formal requests for account reconciliation support regarding the accounts and fees that are the subject of the Agreement.

48. Harris Bank's failure to provide the requested information is a breach of the Agreement.

49.     Priority has been damaged as a result of Harris Bank's breach.

50.     WHEREFORE, Plaintiff Cynergy Data LLC prays for a judgment in its favor and against Defendant Harris Bank on Count II in an amount to be determined at trial, estimated to be an amount exceeding $3,347,451.51, costs, attorneys' fees, prejudgment interest, and for such other relief as the Court deems just and fair.

## COUNT III
### (Unjust Enrichment)
*(In the Alternative to the Forgoing Counts)*

51.     Plaintiff repeats and realleges the allegations in the preceding paragraphs as though fully set forth herein.

52.     In the alternative, Defendant was unjustly enriched by the receipt of fees for services which were not actually utilized by Priority.

53.     In the event no valid and enforceable contract exists between the parties that prohibited Defendant from charging fees for interchange funding when Cynergy's Settlement DDA contained sufficient funds that no interchange funding was actually required, Priority lacks an adequate remedy at law.

54.     It would be unjust to allow Defendant to retain compensation in excess of $3,347,451.51 for services it did not actually perform and for which it was not authorized to collect fees.

55.     Defendant has thus been unjustly enriched in excess of $3,347,451.51.

WHEREFORE, Plaintiff Cynergy Data LLC prays for a judgment in its favor and against Defendant Harris Bank on Count III in an amount to be determined at trial, estimated to be an amount exceeding $3,347,451.51, costs, prejudgment interest, and for such other relief as the Court deems just and fair, including attorneys' fees.

DATED: February 27, 2018

                       Respectfully submitted,

                       By: /s/ Thomas E. L. Dewey
                            Thomas E. L. Dewey

Todd H. Flaming (todd@krausflaming.com)
**KrausFlaming LLC**
20 South Clark Street, Suite 2620
Chicago, Illinois 60603
(312) 447-7217

Thomas E.L. Dewey (tdewey@dpklaw.com)
  (*Pending admission* pro hac vice)
David S. Pegno (dpegno@dpklaw.com)
  (*Pending admission* pro hac vice)
L. Lars Hulsebus (lhulsebus@dkplaw.com)
  (*Pending admission* pro hac vice)
**Dewey Pegno and Kramarsky LLP**
777 Third Avenue
New York, New York 10017
(212) 943-9000

*Attorneys for Plaintiff*