**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CYNERGY DATA LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:18-cv-01459** |
| | ) | |
| **BMO HARRIS BANK N.A.,** | ) | **Judge John Z. Lee** |
| | ) | |
| **Defendant.** | ) | |

**CYNERGY DATA LLC'S ANSWER TO**
**BMO HARRIS BANK N.A.'S COUNTERCLAIM**

Plaintiff and Counterclaim Defendant Cynergy Data LLC ("Cynergy"), by and through

its undersigned attorneys, hereby answers the Counterclaim of Defendant, BMO Harris Bank

N.A. ("BMO Harris"), filed May 7, 2018. Cynergy incorporates into each response a denial of

all allegations in the Counterclaim except those expressly admitted herein, and denies any

allegations in the preliminary statement, headings, subheadings, and footnotes of the

Counterclaim, which do not set forth BMO Harris's claims in numbered paragraphs, as

required by Rule 7(b) of the Federal Rules of Civil Procedure.

Subject to the foregoing, Cynergy responds to the specific allegations in the

Counterclaim as follows:

## THE PARTIES

1.      Defendant BMO Harris is a large, nationally chartered bank with its principal

place of business in Chicago, Illinois.

**ANSWER:**   Cynergy admits the allegations in this paragraph.

2.     Plaintiff Cynergy is a limited liability corporation engaged in the business of providing payment transaction processing to merchants, with offices in New York.

**ANSWER:**   Cynergy admits that it is "a limited liability corporation engaged in the business of providing payment transaction processing to merchants," but denies the remaining allegations in this paragraph.

## BIN SPONSOR
## AGREEMENT

3.     On October 23, 2008, BMO Harris and Cynergy executed the BIN Agreement under which BMO Harris would sponsor Cynergy into the Visa U.S.A ("Visa") and MasterCard International ("MasterCard") card associations (the "Associations").

**ANSWER:**   Cynergy admits the allegations in this paragraph except those as to the date of the signing of the document, which are denied.

4.     Cynergy is an Independent Sales Organization ("ISO") and is not part of or owned by any financial institution.  Under the Associations' rules, regulations, and requirements, sponsorship by a bank such as BMO Harris is necessary for Cynergy to process Visa and MasterCard transactions for merchants.

**ANSWER:**   Cynergy admits the allegations in this paragraph.

5.     As a sponsoring bank, BMO Harris is responsible for maintaining the necessary working capital to clear and settle the merchants' Visa and MasterCard transactions and maintaining various bank accounts, including merchant settlement accounts used for the transfer of funds to the merchants.

**ANSWER:**   Cynergy lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

## CYNERGY'S WRONGFUL RETENTION AND DISCLOSURE OF
## BMO HARRIS'S CONFIDENTIAL INFORMATION

6.     The fees BMO Harris charged to Cynergy for these services pursuant to

2

the BIN Agreement, along with related guidelines, are detailed in Exhibits A, B, and C thereto.

**ANSWER:** Cynergy admits that the referenced fees are those BMO Harris was supposed to charge, and it otherwise denies the allegations in this paragraph.

7. BMO Harris operates in a highly competitive marketplace with other large sponsoring banks, and as such, the pricing structures it offers to ISOs such as Cynergy include highly sensitive, closely guarded proprietary information. If that proprietary information is made available to BMO Harris's competitors, it very likely would be used to BMO Harris's detriment and undermine BMO Harris's market position.

**ANSWER:** Cynergy denies the allegations in this paragraph.

8. The proprietary pricing structures are "Confidential Information," defined in the BIN Agreement as:

> information owned or licensed by each party including, but not limited to, any information pertaining to the disclosing party's business operations, know how, manner and means of doing business, **pricing**, computer and software systems and programming, contracts, marketing strategies, business plans, notes, financial projections, financial statements, sales reports, technical partners, information regarding third parties doing business with either party, requirements and related information and any communications whether in oral, written, graphic, magnetic, or electronic form, that is known or reasonably should be known by the other party to be confidential or proprietary.

BIN Agreement Part I (emphasis added).

**ANSWER:** Cynergy denies the allegations in this paragraph.

9. In acknowledgement of the highly sensitive nature of the proprietary information set forth in Exhibits A, B, and C to the BIN Agreement, BMO Harris and Cynergy each agreed to

> retain in confidence the Confidential Information and all information and data belonging to or relating to the business of the other party . . . , and that each party will safeguard such information and data by using the same degree of care and discretion that it uses to protect its own Confidential Information.

3

> . . . ISO and Bank will implement reasonable and appropriate
> safeguards to prevent unauthorized access to . . . the other party's
> Confidential Information.

BIN Agreement ¶ 6.2A.

**ANSWER:** Cynergy admits that the quoted language is contained in ¶ 6.2A of the BIN

Agreement, which "BMO Harris and Cynergy each agreed to," but denies the remaining

allegations in this paragraph.

10. The BIN Agreement requires express consent from the party whose

Confidential Information is sought to be disclosed prior to any such disclosure. BIN

Agreement ¶ 6.2B.

**ANSWER:** Cynergy lacks knowledge or information sufficient to form a belief

about the truth of the allegations in this paragraph.

11. The BIN Agreement further provides that

> Upon termination of this Agreement, the Recipient shall promptly
> deliver to the disclosing party of Confidential Information
> ("Disclosing Party") all Confidential Information in its possession
> or under its control or, alternately, shall destroy the Disclosing
> Party's Confidential Information and certify to such destruction;
> provided, however, that Confidential Information required by
> auditors, the Rules, or regulators to be retained bay be retained by
> the Recipient.

BIN Agreement ¶ 6.2C

**ANSWER:** Cynergy admits that the quoted language is contained in ¶ 6.2C of the BIN

Agreement.

12. On March 30, 2016, Cynergy, through its then-CEO Richard J. Harris, notified

BMO Harris in writing of its intention to terminate the BIN Agreement and transition to

sponsorship from Merrick Bank "no later than October 31, 2016."

**ANSWER:** Cynergy admits the allegations in this paragraph.

13. On or about October 31, 2016, Cynergy terminated the BIN

4

Agreement and transitioned to being sponsored by Merrick Bank.

>    **ANSWER:** Cynergy admits the allegations in this paragraph.

14.    Following that termination and transition, Cynergy failed to return or destroy the copies of the BMO Harris Confidential Information set forth in Exhibits A, B, and C to the BIN Agreement in its possession. Cynergy's retention of BMO Harris's Confidential Information was not in response to any requirement from auditors, the Associations, or regulators.

>    **ANSWER:** Cynergy denies the allegations in this paragraph.

15.    On February 27, 2018, Cynergy filed the BIN Agreement and Exhibits A, B, and C thereto publicly as attachments to the Complaint.

>    **ANSWER:** Cynergy admits the allegations in this paragraph.

16.    Cynergy's public filing of these documents effected disclosure of Confidential Information to the general public.

>    **ANSWER:** Cynergy denies the allegations in this paragraph.

17.    The Confidential Information was not available to the general public prior to Cynergy's disclosure.

>    **ANSWER:** Cynergy lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

18.    Cynergy neither sought nor received any consent, express or implied, from BMO Harris prior to its disclosure of the Confidential Information.

>    **ANSWER:** Cynergy admits that it did not seek consent from BMO Harris before filing the Complaint and its exhibits, and denies the remaining allegations in this paragraph.

19.    By failing to return or destroy the Confidential Information, and then filing it publicly as an attachment to the Complaint, Cynergy has violated at least Paragraphs 6.2A, B, and C of the BIN Agreement.

ANSWER:   Cynergy denies the allegations in this paragraph.

**COUNT I - BREACH OF BIN AGREEMENT'S CONFIDENTIALITY PROVISION**

20.     BMO Harris sets forth and realleges Paragraphs 1-17 as if fully set forth herein.

ANSWER:   Cynergy repeats and incorporates its answers to Paragraphs 1-17 as if fully set forth herein.

21.     The BIN Agreement between BMO Harris and Cynergy, dated October 23, 2008, as subsequently amended, constitutes a valid and enforceable contract.

ANSWER:   This paragraph states a legal conclusion to which no answer is required.

22.     Under Paragraph 6.2A of the BIN Agreement, Cynergy is to retain in confidence the Confidential Information and all information and data belonging to or relating to BMO Harris's business disclosed to Cynergy, to safeguard such information and data by using the same degree of care and discretion that it uses to protect its own Confidential Information, and to implement reasonable and appropriate safeguards to prevent unauthorized access to the Confidential Information.  The Confidential Information was protectable and proprietary

ANSWER:   Cynergy denies the allegations in this paragraph.

23.     Under Paragraph 6.2B of the BIN Agreement, Cynergy is to obtain BMO Harris's express consent prior to any disclosure of the Confidential Information to third parties.

ANSWER:   Cynergy denies the allegations in this paragraph.

24.     Under Paragraph 6.2C of the BIN Agreement, Cynergy was required to return or destroy any of the Confidential Information within its possession following the termination of the BIN Agreement.

6

**ANSWER:** Cynergy denies the allegations in this paragraph.

25.     The pricing and related information set forth in Exhibits A, B, and C to the BIN Agreement constitute the Confidential Information.

**ANSWER:** Cynergy denies the allegations in this paragraph.

26.     By filing Exhibits A, B, and C to the BIN Agreement publicly as attachments to the Complaint, Cynergy breached Paragraphs 6.2A, B, and C of the BIN Agreement.

**ANSWER:** Cynergy denies the allegations in this paragraph.

27.     Cynergy's breach of the BIN Agreement's confidentiality provisions has been or is highly likely to be used by competitors to advance their own positions in the marketplace, causing harm to BMO Harris.

**ANSWER:** Cynergy denies the allegations in this paragraph.

**WHEREFORE** Defendant BMO Harris Bank N.A. respectfully requests that this Court:

    a.     Enter judgment against Cynergy in an amount to be determined at trial plus attorneys' fees and costs; and

    b.     Order such relief as the Court may deem equitable, just, and proper.

    c.     [sic]

**ANSWER:**     To the extent any answer is required, Cynergy denies that BMO Harris is entitled to any relief.

## AFFIRMATIVE DEFENSES

Without assuming any burden of proof that it would not otherwise bear, Cynergy asserts the following affirmative defenses. Cynergy reserves the right to supplement or amend its affirmative defenses based on the discovery of new information, amendments to BMO Harris's pleadings or any other papers submitted by BMO Harris, orders or rulings of

this Court, or as justice may otherwise require.

## FIRST AFFIRMATIVE DEFENSE

The Counterclaim fails to state a claim against upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

The Counterclaim is barred in whole or in part by the doctrines of waiver, laches, acquiescence, and/or unclean hands, because, among other things, BMO Harris waited 33 days from the filing and service of the Complaint and exhibits to the Complaint to inform Cynergy of its belief that the exhibits contained confidential information, and did not take any action to seal the exhibits or otherwise protect its information during or even after that time.

## THIRD AFFIRMATIVE DEFENSE

The Counterclaim is barred in whole or in part because BMO Harris failed to take reasonable steps to mitigate its damages. Among other things, BMO Harris waited 33 days from the filing and services of the Complaint and exhibits to the Complaint to inform Cynergy of its belief that the exhibits contained confidential information, and did not take any action to seal the exhibits or otherwise protect its information during that time.

## FOURTH AFFIRMATIVE DEFENSE

The Counterclaim is barred in whole or in part because BMO Harris's alleged damages, if any, are speculative.

## FIFTH AFFIRMATIVE DEFENSE

The Counterclaim is barred in whole or in part because the information set forth in Exhibits A, B, and C to the BIN Agreement is sufficiently out of date as to no longer constitute Confidential Information under the BIN Agreement's confidentiality provisions, and/or is unlikely to be useful to or used by BMO Harris's competitors.

## SIXTH AFFIRMATIVE DEFENSE

The Counterclaim is barred in whole or in part by BMO Harris's prior material breach of the BIN Sponsorship Agreement, including but not limited to as alleged in the Complaint.

8

## SEVENTH AFFIRMATIVE DEFENSE

Cynergy is entitled to offset BMO Harris's damages, if any, by amounts BMO Harris owes to Cynergy, as alleged in the Complaint.


DATED:  May 29, 2018

Respectfully submitted,


By:   /s/ Thomas E. L. Dewey
        Thomas E. L. Dewey


Todd H. Flaming (todd@krausflaming.com)
**KrausFlaming LLC**
20 South Clark Street, Suite 2620
Chicago, Illinois 60603
(312) 447-7217

Thomas E.L. Dewey (tdewey@dpklaw.com)
   (admitted pro hac vice)
David S. Pegno (dpegno@dpklaw.com)
   (admitted pro hac vice)
L. Lars Hulsebus (lhulsebus@dkplaw.com)
   (admitted pro hac vice)
**Dewey Pegno and Kramarsky LLP**
777 Third Avenue
New York, New York 10017
(212) 943-9000

*Attorneys for Plaintiff*

9