# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CYNERGY DATA LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 18 C 1459 |
| | ) | |
| BMO HARRIS BANK N.A., | ) | Judge John Z. Lee |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Cynergy Data LLC ("Cynergy") has sued BMO Harris Bank N.A. ("BMO Harris") for breach of contract and unjust enrichment under Illinois law, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. BMO Harris has moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is denied.

## Factual Background[1]

When a consumer uses her credit card to make a purchase, the bank that issued the card (known as the "issuing bank") requests certain information about the transaction prior to authorizing the transaction. Compl. ¶ 12, ECF No. 1. At the end of the business day, the seller's bank (known as the "acquiring bank") requests payment for the authorized transaction from the issuing bank. *Id.* The issuing bank then remits payment for the amount of the charge, minus its own fee (known as the "interchange fee"). *Id.* This transfer of funds is referred to as a

---

[1] On a motion to dismiss, the district court accepts all facts pleaded as true and draws all reasonable inferences in the plaintiff's favor. *McDonald v. Adamson*, 840 F.3d 343, 345–46 (7th Cir. 2016).

"settlement." *Id.* These steps are facilitated by a payment processor, which is required to be "sponsored" by a bank that is a member of a credit card association. *Id.* ¶¶ 12–13.

In this case, Cynergy[2] is a payment processor. *Id.* ¶ 5; *see* Compl., Ex. A, BIN Agreement ("BIN Agreement"), Preamble, ECF No. 1. BMO Harris,[3] a member of both Visa and MasterCard credit card associations, is Cynergy's sponsoring bank. Compl. ¶ 16.

To solidify this arrangement, Cynergy and BMO Harris entered into a BIN Sponsor Agreement[4] ("BIN Agreement") on November 1, 2008. *Id.*; BIN Agreement. The BIN Agreement specified that Moneris Solutions ("Moneris"), a then-subsidiary of BMO Harris, would facilitate the necessary payment transactions between Cynergy and its merchants as well as between Cynergy and BMO Harris. Compl. ¶¶ 6, 20.

In 2009, Cynergy began offering a monthly discount service program to merchants. *Id.* ¶ 17. This program allowed merchants to pay interchange fees in a monthly lump sum, rather than on a daily basis. *Id.* Merchants appreciated the service because they found it difficult to reconcile their daily sales figures with daily bank receipts when the interchange fees were deducted from the charges on a daily basis. *Id.* ¶ 14. Cynergy's monthly discount services required it to front interchange fees for its merchants on a daily basis, only recouping those fees at the end of each month. *Id.* ¶ 17.

---

[2] Cynergy is organized under the laws of Delaware and has its headquarters in Alpharetta, Georgia. Compl. ¶ 5.

[3] BMO Harris is a national banking association with its main offices in Chicago, Illinois. *Id.* ¶ 6. BMO Harris is a subsidiary of BMO Financial Corp., a corporation organized under the laws of Delaware with its headquarters in Wilmington, Delaware. *Id.*

[4] A "BIN Sponsor Agreement" between a processor and sponsor bank enables the processor to engage in the business of providing payment transaction processing to merchants by assigning a bank identification number and interbank card association for the exclusive use of the processor's merchants. *See* BIN Agreement.

As the monthly discount program grew, Cynergy found itself having to front increasingly larger sums of money from its settlement account for its merchants. *Id.* To provide Cynergy with short-term liquidity, BMO Harris agreed to advance funds to Cynergy for this purpose, and in return, BMO Harris charged Cynergy fees and interest on the advanced amounts. *Id.* ¶ 2. To memorialize this plan, on April 27, 2009, Cynergy and BMO Harris signed a Second Amendment to the BIN Agreement ("Second Amendment"), which provided that BMO Harris would partially fund interchange fees ("interchange funding fees") for Cynergy. *Id.* ¶ 19; Compl., Ex. B, Second Amendment ("Beginning August 1, 2009, Bank may continue to partially fund interchange on a month-to-month basis in it [sic] sole discretion."). In all other respects, the BIN Agreement remain unchanged. *See* Second Amendment.

According to Cynergy, under the Second Amendment, if Cynergy's settlement account contained sufficient funds to cover the issuing banks' daily interchange fees charged in connection with the transactions Cynergy processed that day, BMO Harris was not authorized to charge interchange funding fees. Compl. ¶ 28. Conversely, if Cynergy's settlement account contained insufficient funds to cover the daily interchange fees, BMO Harris was authorized to advance the difference and charge fees and interest. *Id.* ¶¶ 19, 28.

According to Cynergy, at all times, there were sufficient funds in its settlement fund account to pay the daily interchange fees. *Id.* ¶ 29. In addition, Cynergy claims that, because the funds in the settlement account are fungible, it is common industry practice to use merchant funds as well as payment processor funds to settle daily interchange fees. *Id.* What is more, Cynergy alleges that, to the extent that funds existed in Cynergy's other accounts at BMO Harris, there was no need for BMO Harris to advance Cynergy's daily interchange fees. *Id.* ¶ 30. Thus, Cynergy

3

alleges, BMO Harris never really had to advance any funds to cover a shortfall and should not have charged any interchange funding fees or interest. *Id.*

Cynergy declared bankruptcy approximately four months after signing the Second Amendment. *See In re Cynergy Data LLC*, Bk. Pet. No. 09-13038 (D. Del. Sept. 1, 2009). After exiting bankruptcy, Cynergy merged with Priority Payments Systems, LLC[5] ("PPS") in 2014. Compl. ¶ 5. PPS and BMO Harris continued to operate under the BIN Agreement and the Second Amendment. *Id.* ¶ 22. BMO Harris continued to charge interchange funding fees and interest and provided to PPS daily and monthly invoices of income and expenses incurred. *Id.* ¶¶ 22, 28.

In 2015, PPS's management became concerned that PPS and its predecessor, Cynergy, had been overcharged and that the invoices did not tell the entire story. *Id.* ¶ 22. At any given time, the settlement account held approximately $40 to 60 million in funds belonging to approximately 70,000 merchants. *Id.* ¶ 23. BMO Harris thus housed funds and then charged Cynergy for "usage," which was not contemplated by the Second Amendment. *Id.* ¶ 37. In addition, BMO Harris consistently and improperly charged fees for "float" associated with the interchange. *Id.* ¶ 38. Without a detailed account reconciliation from BMO Harris, PPS could not verify the propriety of the charges billed by BMO Harris. *Id.* ¶ 23.

On February 24, 2015, PPS requested in writing that BMO Harris provide supporting documentation relating to $14 million in deductions from the settlement account. *Id.* The BIN Agreement required BMO Harris to provide BIN processing reports received from Visa and

---

[5] Priority Payments Systems, LLC is organized under the laws of the Georgia with its headquarters in Alpharetta, Georgia. *Id.* ¶ 5.

MasterCard and any data related to the BIN Agreement within two days from the receipt of the request. *Id.* ¶ 21; BIN Agreement ¶ 3.1.F.

BMO Harris responded on March 10, 2015: "Under Moneris' fiduciary authority with BMO Harris Bank, Moneris' treasury management decisions related to these funds and the activity resulting from these decisions are performed at the sole discretion of [Moneris]. Such decisions and activity are deemed confidential to [Moneris]." *Id.* ¶ 24. Despite PPS's numerous written requests, BMO Harris has not provided daily reconciliation of the settlement account. *Id.* ¶ 26.

PPS informed BMO Harris of its concerns regarding overbilling and demanded that BMO Harris stop charging interchange funding fees; however, BMO Harris continued to charge these fees on a monthly basis until PPS terminated the BIN Agreement in January 2016. *Id.* ¶ 31. PPS estimates that BMO Harris has overbilled Cynergy and PPS by over $3.4 million. *Id.* ¶¶ 26, 32.

Cynergy alleges that BMO Harris breached the BIN Agreement and Second Amendment by overbilling Cynergy and PPS for interchange funding fees and interest. *Id.* ¶¶ 33–41. Cynergy also alleges that BMO Harris breached the BIN Agreement by failing to provide PPS with additional data related to the BIN Agreement and the Second Amendment as requested by PPS. *Id.* ¶¶ 43–49. In the alternative, Cynergy alleges that BMO Harris has been unjustly enriched by the overbilling. *Id.* ¶¶ 51–55.

## **Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Additionally, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).

## Analysis

### I. Breach of Contract (Counts I and II)

"Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: '(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages.'" *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. 2004)). "The Illinois courts have stated that every contract implies good faith and fair dealing between the parties to it[,]" particularly when "the contractual obligation of one party [i]s contingent upon a condition peculiarly within the power of that party." *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992). "[T]he implied covenant of good faith limits the controlling party's discretion and the controlling party must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Id.* (internal quotation marks omitted).

#### A. Overbilling

BMO Harris argues that Cynergy's breach of contract claims based on overbilling must be dismissed as a matter of law, because the language of the Second Amendment unambiguously allowed BMO Harris to partially fund the interchange fees "in its sole discretion." *See* Second

Amendment ("Bank may continue to partially fund interchange on a month-to-month basis in its sole discretion."). In BMO Harris's view, this language authorized it to advance up to 99.9% of the interchange fees and charge Cynergy fees and interest for the advance, regardless of whether the advance was actually necessary.

Cynergy counters that BMO Harris breached the Second Amendment by abusing its discretion in determining whether to partially fund Cynergy's daily interchange fees and in what amount. Specifically, Cynergy alleges that BMO Harris abused its discretion by advancing Cynergy's daily interchange fees even when Cynergy had sufficient funds in its settlement account to pay them. *See* Compl. ¶ 2. In addition, Cynergy asserts that BMO Harris advanced funds for interchange fees even when Cynergy had other accounts at BMO Harris that could have covered the interchange fees. *Id.* ¶ 30. As Cynergy sees it, BMO Harris then added insult to injury by charging Cynergy a "usage" fee for those additional funds, which was not permitted under either the BIN Agreement or the Second Agreement. *Id.* ¶ 37. Lastly, Cynergy contends that the manner in which BMO Harris determined whether to advance interchange fees was inconsistent with industry practice, which allows merchant funds as well as payment processor funds to be used to settle daily interchange fees. *Id.* ¶ 29.

In response to the last argument, BMO Harris points to language in the BIN Agreement that states, "[Cynergy] acknowledges that it will not have access to Merchant funds . . . ." BIN Agreement ¶ 2.1.F. But this does not carry the day, because the issue is whether BMO Harris could have used Cynergy's merchant funds (as well as other available funds) to cover the daily interchange fees, not whether Cynergy could have done so.

BMO Harris also argues that Cynergy admitted during its bankruptcy proceedings that certain merchant funds were unfunded or underfunded and, thus, Cynergy cannot now assert that

BMO Harris could have used merchant funds to cover the interchange fees. In support, BMO Harris asks that the Court take judicial notice of certain pleadings filed in *In re CD Liquidation Co. LLC*, No. 09-13038 (KG). But this was a lengthy bankruptcy proceeding, and the Court declines to rely upon selected statements from one pleading, particularly when the bankruptcy proceeding is not mentioned in the complaint.

For these reasons, the Court holds that the complaint sufficiently states a breach of contract claim based on overbilling and denies BMO Harris's motion to dismiss on this ground.

### B. Requested Data

The BIN Agreement required BMO Harris to provide any data related to the BIN Agreement within two days of the receipt of a request from Cynergy. Compl. ¶ 25; BIN Agreement ¶ 3.1.F. Cynergy alleges that, on February 24, 2015, PPS requested in writing that BMO Harris provide supporting documentation relating to millions of dollars in deductions from the settlement account. *Id.* ¶ 23. Two weeks later, BMO Harris responded that it could not provide the requested documentation because management decisions related to the settlement fund were deemed confidential to Moneris, a subsidiary of BMO Harris. *Id.* ¶ 24. To date, BMO Harris has not provided daily reconciliation of the settlement account, despite PPS's numerous written requests. *Id.* ¶ 26.

BMO Harris does not assert that the complaint fails to allege an enforceable contract, substantial performance by Cynergy, or a breach by BMO Harris in this regard. Rather, BMO Harris argues that PPS did not need the information because, even without it, PPS has been able to estimate overbilling in the amount of $3.4 million. But paragraph 3.1F does not condition a request on a showing of necessity or good cause.

BMO Harris also argues that Cynergy has not alleged damages resulting from the alleged breach. To the contrary, viewing all of the allegations in the Complaint as true, it may be reasonably inferred that PPS has suffered pecuniary losses as well as damages, including the resources expended in its efforts to analyze the disputed amounts. *See id*. ¶¶ 42, 49–50. For this reason, the Court denies BMO Harris's motion to dismiss on this ground.

## II. Unjust Enrichment (Count III)

"[A] party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2002); Fed. R. Civ. P. 8(d) (allowing alternate and inconsistent claims in pleadings). "Quasi-contractual relief is available when one party has benefited from the services of another under circumstances in which, according to the dictates of equity and good conscience, he ought not retain such benefit." *Barry Mogul & Assoc., Inc. v. Terrestris Dev. Co.*, 643 N.E.2d 245, 251 (Ill. App. Ct. 1994). That said, "Illinois law does not permit a party to recover on a theory of quasi-contract when an actual contract governs the parties' relations on that issue." *Keck Garrett & Assocs., Inc., v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008).

In support of its unjust enrichment claim, Cynergy alleges: "In the event no valid and enforceable contract exists between the parties that prohibited [BMO Harris] from charging fees for interchange funding when Cynergy's Settlement DDA contained sufficient funds that no interchange funding was actually required, [PPS] lacks an adequate remedy at law." Compl. ¶ 53. BMO Harris argues that the unjust enrichment claim must be dismissed because the BIN Agreement governs this dispute. But, at least at this nascent stage in the proceedings, Cynergy is permitted to assert its unjust enrichment claim in the alternative, which it has done.

**Conclusion**

For the above reasons, the Court denies BMO Harris's motion to dismiss.

**SO ORDERED**  ENTER:  3/8/19

_____
**JOHN Z. LEE
U.S. District Judge**